IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1314 |
| | ) | Judge David S. Cercone |
| TOWNSHIP OF CUMBERLAND, | ) | Magistrate Judge Lisa Pupo Lenihan |
| and WILLIAM LEWIS, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Motion for Summary Judgment filed by Defendants on August 31, 2006 be granted, as Phillips has failed to establish evidence of any unlawful municipal custom or policy against Defendants, has failed to establish any reasonable expectation of privacy[1] while on duty as a police officer in Defendant Township's patrol car, and has otherwise failed to establish evidence sufficient to make out any of the claims of the Complaint.

---

1.  See Katz v. United States, 389 U.S. 347 (1967)  (determining that Fourth Amendment's protections apply where there is a "reasonable expectation of privacy").

## II. REPORT

### A. Statement of Facts and Procedural History

As more fully set forth in Plaintiff's filings in this case, and Defendants' Motion for Summary Judgment, Plaintiff Jason Phillips ("Phillips") was employed as a part-time, night-shift police officer by Defendant Township of Cumberland ("Cumberland") from March 2001 through April 2004. The Township's Chief of Police is Defendant William Lewis ("Lewis").

At some time during the latter period of Phillips' employment, Cumberland purchased a video camera recording system for one of its four patrol cars, and it was installed in the Crown Victoria generally utilized by Lewis, but driven by other officers, including Phillips, when their usual vehicle was not available. The video recording system is located in the trunk of the patrol car, and the camera hangs from the windshield to the right of the driver. Phillips testified at deposition that he was aware of Cumberland's purchase of the recording device, and of its installation in the Crown Victoria. He further testified that, although he did not receive any training by Cumberland on the system's operation, it was the same camera unit he utilized, and on which he was trained by other officers, while employed as a police officer in Waynesburg Borough. In addition, although he made no inquiries regarding the camera's operation, Phillips believes it was connected to the ignition switch and began recording upon starting the vehicle.[2]

---

2. See Defendants' Concise Statement of Material Facts in Support of Its Motion for Summary Judgment at ¶¶ 14, 23, 51. See Plaintiff's Response to Defendant's Concise Statement of Material Facts (admitting every paragraph). Cf. Plaintiff's Deposition Testimony at 52 (stating that when he was operating the patrol car he "knew video was being recorded"). But see Defendant's Concise Statement at ¶ 20 (citing Phillips' deposition testimony that he pushed a record button on the camera for vehicle stops); id. at ¶ 46 (citing Phillips' testimony that he believed the camera was recording when he activated the patrol car lights for a traffic stop).

He did not know whether or not it had a microphone or, if so, where.[3] Phillips, who drove the Crown Victoria approximately once or twice each month, also did not know whether Lewis or any other officer used the camera or whether anyone regularly reviewed the patrol car videotapes.[4] He did not know whether the system could be operated remotely.[5] He never expressed any concerns regarding, or made any inquiries regarding, policies or operation of the recording system. To his knowledge, Cumberland had no written or verbal policies regarding usage of the recording system.[6]

On April 1, 2004, Phillips met with Lewis and other unidentified individuals with regard to termination of his employment. At that time, Lewis played all or a portion of two video cassette tapes recorded by the device in the Crown Victoria patrol car. One, made on October 15, 2003, consisted of an audio recording of Phillips in conversation with unidentified others. The second, made on November 7, 2003, contained an audio recording of Phillips in telephone conversation with a female. Phillips alleges that he was then advised to resign or face public disclosure of the recorded material, and that he was terminated for unsatisfactory work performance.[7]

Plaintiff filed a Complaint in this Court in September, 2005, alleging constitutional violations under the Fourth and Fourteenth Amendments and the Federal Wire Tap Act, as well

---

3. Id. at ¶¶ 30, 35.

4. Id. at ¶¶ 18, 24, 36.

5. Id. at ¶ 50.

6. Id. at ¶¶ 33, 38, 39.

7. See Plaintiff's Memorandum in Opposition of Defendant's Motion for Summary Judgment at 3.

as a pendant state law claim for invasion of privacy. His principal contention is that Defendants invaded his right to, and reasonable expectation of, privacy and terminated his employment on the basis of illegally/improperly obtained information. His sole allegation against Lewis is that Cumberland permitted him to have final authority on the recording of Phillips' conversations.

It must also be noted that on August 18, 2006, as a result of egregious failures to comply with this Court's numerous previous Orders regarding discovery deadlines, extended discovery deadlines, Defendants' Motion to Compel response to discovery requests, and status conference, this Court ordered that Plaintiff be "precluded from offering any evidence on liability or damages at trial, with the exception of Plaintiff's own testimony" and that Plaintiff be "precluded from arguing, in response to any motion for summary judgment, any evidence that ha[d] not been provided to Defendants through discovery."[8]

### B. Motion for Summary Judgment

In deciding a motion for summary judgment, the Court considers whether the non-moving party has - through pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any - established any genuine issue of material fact sufficient for a reasonable jury to find in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). The non-moving party may not rest upon factually unsupported allegations contained in its pleadings; however, all inferences must be drawn and all doubts resolved in his favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Colburn v. Upper Darby Townshp., 946 F.2d

---

8. Compare Plaintiff's Memorandum in Opposition at 6 ("In the instant case, discovery was not properly completed; therefore, the Motion for Summary Judgment is pre-mature.").

1017, 1020 (3d Cir. 1990).  If the non-moving party fails to present evidence sufficient to establish an "element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate.  Celotex, 477 U.S. at 322.

**C.  Analysis**

1. Counts I, II and IV

Count I of Plaintiff's Complaint alleges a Fourth Amendment violation for recording of his private conversations without a warrant; Count II alleges a Fourteenth Amendment procedural and substantive due process violation for conduct that was "improper and egregious and shocks the conscious [sic]";[9] Count IV alleges an equal protection violation, asserting that others who violated Defendant's policies and rules were treated more favorably based upon their membership in other groups.

To establish a § 1983 action against Lewis, Plaintiff must show that Lewis personally acted under color of law to cause, or had actual knowledge of and acquiesced in, the alleged depravation of a constitutionally protected interest.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); McQueen v. Philadelphia Housing Authority, 2003 U.S. Dist. LEXIS 19844, *5 (E.D. Pa. 2003).  To establish such an action against Cumberland, a municipal entity, Plaintiff must show that the depravation was caused by official policy, custom or usage and deliberate conduct.  See Monell

---

9. See Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994) (en banc) (holding that "substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience'").

v. Dept. of Social Servs., 436 U.S. 658 (1978) (rejecting municipal liability by virtue of *respondeat superior* and announcing standard);  Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000); Simmons v. City of Philadelphia, 947 F.2d 1042 (3d Cir. 1991).[10]  Phillips must also, to impose liability, demonstrate a plausible nexus of causation between an unlawful policy or custom and the injuries alleged.  See City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985).  Plaintiff, having elected to forgo discovery, proffers insufficient evidence of either, and has admitted contrary statements of fact.  He also proffers no evidence whatsoever of similar incidents or circumstances, or of facts supportive of an equal protection violation, or of facts supportive of a procedural or substantive due process claim.[11]

To the extent Plaintiffs' constitutional claims regarding his patrol-car conversations rest on a reasonable expectation of privacy, they are subject to summary judgment for failure to adduce evidence supporting such reasonable expectation.  Phillips was on duty in a police car that he knew to be equipped with a recording device, of a type in common use for the compelling government purposes of protecting the Township's police force and furthering their crime

---

10. See also Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) (holding that where plaintiff asserts municipal liability by way of policy or custom "it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom").

11. The Report also notes that, as set forth in Defendants' Memorandum in Support of Motion for Summary Judgment at 10-11, Lewis would be entitled to qualified immunity given the complete absence of any showing that he knowingly violated clearly-established law.  See Anderson v. Creighton, 483 U.S. 635 (1987).

protection/prevention goals. See generally Smith v. Maryland, 442 U.S. 735 (1979) (explaining that "reasonable expectation" under Katz posits a two-part inquiry: (a) did the individual manifest a subjective expectation of privacy, and (b) is society willing to recognize that expectation as reasonable); see also discussion *infra*.

    2. Count III

Count III of Plaintiff's Complaint alleges violation of the Federal Wiretap Act, 18 U.S.C. § 2510, by unauthorized interception of Phillips' oral communications. The Act protects communications in which the individual has a reasonable expectation of privacy.[12] Yet, again, Phillips' testimony is that he was familiar with the recording system, was aware of the recording system's presence, and knew it was activated when the patrol car was running. See Gross v. Taylor, 1997 WL 535872, *6-8 (E.D. Pa. 1997) (noting that "the nature of the patrol car diminishes the reasonable expectation of privacy in activities and conversations taking place within it"). See also id. at *7 (explaining that reduced expectation of privacy in police car is based on Supreme Court constitutional law regarding constructive notice; *i.e.*, consideration of the elements of the location and situation) (citations omitted); id. (noting that police officers have been held to have no expectation of conversational privacy in prison); id. (concluding that, in light of recording system's purpose and other officers' general understanding of it, any expectation of privacy was unreasonable); id. at *8 (further concluding that system's visible presence in patrol car undermined any claim of reasonable expectation and noting that "control

---

12. See 18 U.S.C. § 2510(1) (defining "oral communication" covered by the statute as that "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation"). See also, *e.g.*, In re John Doe Trader Number One, 894 F.2d 240, 242 (7th Cir. 1990) (explaining that this statutory language was intended to parallel the Katz standard).

head" located near driver was, like a VCR panel, lit up when recording and "would be fairly obvious"); id. (noting that a person of "reasonable caution would have been alerted to the possibility that a conversation might be recorded").[13]

    3.  Count V

Count V of Plaintiff's Complaint alleges a state law claim for invasion of privacy, but fails to specify or to adduce evidence in support of any of the possible causes of action thereunder.  See Marks v. Bell Tel. Co., 331 A.2d 242 (Pa. 1975) (intrusion on seclusion; appropriation of name/likeness; publicity to private life; or false light); Vogel v. W. T. Grant Co., 327 A.2d 133, 136 (Pa. 1974) (explaining that it is not an invasion of a plaintiff's privacy rights to communicate a private fact to an employer, to another individual, or even to a small group, but that "publicity" occurs when disclosure is "substantially certain to become one of public knowledge").  Although his Memorandum in Opposition asserts that he has "established a tort in which he is raising a cause of action" by asserting Defendants' violation of his "expectation not to have his privacy involved" and their threat of "public ridicule", Plaintiff simply proffers insufficient evidence for any alleged pendant claim.

## III. CONCLUSION

    For the reasons set forth above, it is recommended that Defendants' Motion for Summary Judgment be granted.  Plaintiff has failed to present evidence that Defendants intercepted his

---

13. Cf. Wesley v. WISN Division-Hearst Corp., 806 F.Supp. 812, 815 (E.D. Wis. 1992) (holding that where a person should know "that the means of artificial detection might actually be in place, the person's expectation of non-interception is not reasonable").

patrol-car conversations in violation of any constitutional or statutory law, has failed to demonstrate that he had a reasonable expectation of privacy in his on-duty conversations in the patrol car known to be equipped with a recording device, and has otherwise failed to proffer evidence sufficient to survive summary judgment.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

_____
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: February 20, 2007

cc:   The Honorable David S. Cercone
      United States District Judge

      All Counsel of Record